UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA

|  |  |  |
|---|---|---|
| UBER SCIENTIFIC, LLC dba AMAZON SELLER UBERSCIENTIFIC | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:19-cv-XXXX |
| DOE BOBBIE RODRIQUEZ | ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Uber Scientific, LLC dba Amazon Seller UberScientific ("Plaintiff" or "UberScientific"), and for its Complaint against Defendant DOE Bobbie Rodriquez ("Defendant DOE").  In support thereof, Plaintiff alleges as follows:

## I.   NATURE OF THE ACTION

1.     This is a cause of action to remedy Defendant DOE's anti-competitive, tortious, and fraudulent behavior against Plaintiff on the Amazon.com selling platform.

2.     Upon information and belief, Defendant DOE Bobbie Rodriquez, an Amazon competitor, has lodged counterfeit claims against Plaintiff for selling its own branded products.  Specifically, Plaintiff sold "Uber Numb 5% Lidocaine Topical Anesthetic Cream Advanced Formula Rapid Absorption Non-Oily"

("Accused Products") on Amazon.com.  However, Defendant DOE succeeded in disrupting Plaintiff's business.

3.      Upon information and belief, Defendant DOE has successfully employed a fraudulent scheme of filing trademark complaints against Plaintiff UberScientific for using Plaintiff's own registered trademark – UberScientific®. Besides its actions being illegal, it also harms the Amazon Community's trust and Plaintiff's (and other sellers') business.

4.      Defendant DOE's actions have resulted in Plaintiff's suspended listings and lost sales on Amazon.com.

5.      For all of the foregoing, Plaintiff's causes of action include - tortious interference with contractual and business relations; deceptive trade practices, unfair competition, and unjust enrichment.

II.   **PARTIES**

 **A. Plaintiff UberScientific, LLC**

6.      Plaintiff is a domestic limited liability company organized under the laws of the State of Florida, with its principal place of business at 3211 Vineland Rd STE 250, Kissimmee, Florida  34746.  Plaintiff owns and operates Amazon Storefront "UberScientific."

### B. The Defendant DOE

7.     Upon information and belief, Defendant DOE Bobbie Rodriquez, is an Amazon seller owned or operated by one of Plaintiff's competitors. Besides the name, Defendant DOE is identified by using the following email address: rodriquez@i-copyright.com.

8.     Upon information and belief, Defendant DOE is a business entity of unknown makeup or anonymous individual(s) who conduct business throughout the world, including within this judicial district through the operation of Amazon.com storefront(s), Amazon.com buyer account(s), or e-mail address(es).

9.     Upon information and belief, Defendant DOE directly and indirectly engages in filing trademark counterfeit complaints with the intent to cause harm and damage to Plaintiff. Upon further information and belief, Defendant DOE uses anonymous information masking its true identity, physical address, and other contact information. Upon information and belief, Defendant DOE operates in this fashion to protect its true identity.

10.     Plaintiff is presently unaware of the true identity of Defendant DOE. Once Plaintiff identifies the entity or individual of Defendant DOE, Plaintiff will amend this Complaint.

III.   **JURISDICTION AND VENUE**

11.     This Court has jurisdiction over the subject matter of this action

pursuant to 28 U.S.C. § 1331, in that it involves claims arising under the laws of

the United States and specifically involves 15 U.S.C. § 1125.

12.     This Court has supplemental jurisdiction over Plaintiff's Georgia

state-law claims pursuant to 28 U.S.C. § 1367, in that the state law claims are

integrally related to the federal claims and arise from a common nucleus of

operative facts, such that the resolution of all claims herein is in the interests of

judicial economy.

13.     This Court has personal jurisdiction over Defendant DOE because

Defendant DOE regularly conducts business in the district and has committed

acts in this judicial district which give rise to this action.  On information and

belief, Defendant DOE sells, offers for sale, and has sold products to residents of

this jurisdiction.  As explained in more detail below, Defendant DOE has

purposefully directed actions aimed at harming the Plaintiff in an attempt to

deprive the Plaintiff of its interstate activities.

14.     Venue is proper in this district and division pursuant to 28 U.S.C.

§ 1391.

IV. **ABOUT THE HOUCK FAMILY AND ITS BUSINESS,
UBERSCIENTIFIC®**

A. **The Houck Family**

15.     Plaintiff's owner, Mr. Gary Houck, was born and raised in

Lexington, Kentucky.  After high school, Mr. Houck earned a Political Science

degree from the University of Kentucky.  Later, he earned a Master of Arts from

the Patterson School of Diplomacy and International Commerce at the University

of Kentucky.

16.     Mr. Houck prides himself as always being a saver.  Having money

saved allowed him to buy products in bulk and sell them individually at a profit.

His saving theme followed him throughout life, from elementary school through

college.   For example, he started with buying gum in bulk and selling it at

primary school.  He continued through college by buying and selling necessities.

17.     After college, Mr. Houck joined Local 369 Of the International

Brotherhood of Electrical Workers.  Yearning to learn more about electricity, he

journeyed back to the University of Kentucky and graduated with a Bachelor of

Science in Electrical Engineering.  After graduation, Mr. Houck joined Kentucky

Utilities as a Power Distribution Engineer for 7 years.

18.     While working for Kentucky Utilities, Mr. Houck stumbled upon

Amazon FBA (Fulfilled by Amazon).  Using his life-long knack for saving capitol

and his International Commerce degree, he immediately traveled to China and slowly picked up products to earn a living.

**B. UberScientific**

19.     Currently, through his business, UberScientific, LLC, Mr. Houck now imports and domestically manufacturers Over The Counter ("OTC") medication and beauty products.  Plaintiff's main distribution channel is amazon.com where he sells under the Amazon seller name, UberScientific.

20.     Through hard work and dedication, Plaintiff's Amazon business is Mr. Houck's full-time job over the past 2 years.  Additionally, the Amazon business is the primary means of support for Mr. Houck's family, which includes a wife and their 3-year-old son.

21.     Besides Amazon, Plaintiff also sells via Walmart.com, eBay, and its own website, uberscientific.com.  Ultimately, Plaintiff's business has enjoyed being a Best Seller and Amazon's Choice for its products.  Similarly, Plaintiff is a Power Seller on eBay.

V.    **PLAINTIFF UBERSCIENTIFIC OWNS SEVERAL US TRADEMARK REGISTRATIONS**

22.     Plaintiff UberScientific depends on its registered US trademarks to protect its online businesses.

**A. "UberScientific®" - US Trademark Reg. No. 5,190,832**

23.     Plaintiff UberScientific owns a US trademark registration to "UberScientific®."  US Trademark Reg. No. 5,190,832 ("Asserted Trademark") attached as Exhibit 1.

24.     Plaintiff UberScientific filed its trademark application on September 21, 2016 based on its date of first use in commerce of November 15, 2015. Exhibit 1.  The USPTO published the application for opposition on February 7, 2017, and since no one opposed, registered the trademark on April 25, 2017. Exhibit 1.

25.     Plaintiff sells its Amazon goods using its UberScientific® trademark as its Amazon Seller Name (see below).



---

[1] Uber Numb 5% Lidocaine Topical Anesthetic Cream Advanced Formula Rapid Absorption Non-Oily (2 Ounce (CR)) by UberScientific *available at*

### B. "UBER NUMB®" - US Trademark Reg. No. 5,410,444

26.    Plaintiff UberScientific also owns a US trademark registration to

"UBER NUMB®."  US Trademark Reg. No. 5,410,444, Exhibit 2.  Plaintiff

submitted its application on February 9, 2017, and the USPTO registered it on

February 27, 2018.  Exhibit 2.

27.    Plaintiff sells one of its topical

anesthetic cream under its UBER NUMB®

registered trademark (displayed to the right).[2]



### C. "ADVANCED NUMB®" - US Trademark Reg. No. 5,676,661

28.    Plaintiff UberScientific owns a US trademark registration to

ADVANCED NUMB®.  US Trademark Reg. No. 5,676,661, Exhibit 3.  Plaintiff

submitted its application on April 25, 2018, and the USPTO registered it on

February 12, 2019.  Exhibit 3.

---

https://www.amazon.com/Lidocaine-Ointment-Numbing-Cream-Child-Resistant/dp/B07DMP62H1?ref_=bl_dp_s_web_14589965011&th=1 (last visited Jun. 12, 2019).

[2] Uber Numb 5% Lidocaine Topical Anesthetic Cream Advanced Formula Rapid Absorption Non-Oily (2 Ounce (CR)) by UberScientific *available at* https://www.amazon.com/Lidocaine-Ointment-Numbing-Cream-Child-Resistant/dp/B07DMP62H1?ref_=bl_dp_s_web_14589965011&th=1 (last visited Jun. 12, 2019).

29.     Similar to UBER NUMB®, Plaintiff

utilizes its ADVANCED NUMB® trademark as

another product brand name (shown right). [3]



VI.     **AMAZON.COM, INC.[4]**

30.     Amazon.com Inc. is the world's largest

online retailer.  The Amazon.com platform offers products worldwide.  Amazon

is available solely online at https://www.amazon.com / (last visited Jun. 12,

2019).

31.     "Amazon provides a platform for third-party sellers ("Sellers") and

buyers ("Buyers") to negotiate and complete transactions. Amazon is not

involved in the actual transaction between Sellers and Buyers . . . ."

https://www.sec.gov/Archives/edgar/data/1280998/000104746904006416/a21

28948zex-10_19.htm (last visited Jul. 8, 2019).

32.     Sellers ship goods to various Amazon warehouses across the United

States.  At those warehouses, Amazon stores a seller's inventory and ships goods

---

[3] Advanced Numb (2 oz) 5% Lidocaine Pain Relief Cream, Lidocaine Ointment,
Numbing Cream, Made in USA *available at* https://www.amazon.com/
Advanced-Numb-Lidocaine-Ointment-Numbing/dp/B07GRDWSN8 (last
visited Jun. 12, 2019).

[4] Amazon.com Inc. is the corporation that owns and operates Amazon.com,
which is often abbreviated to Amazon.

out of those warehouses.  Only about half of the states have Amazon warehouses.  Georgia is one of those states.[5]

33.     To make a purchase, typically, a Buyer searches for a particular item on Amazon.com or via a mobile application and submits an order.

34.     Amazon identifies that particular item at one of its many warehouses.  Amazon then fulfills that order by mailing the items to the Buyer.

### A. Selling on Amazon.com Successfully

35.     Amazon.com, Inc. allows Sellers to offer for sale and sell products on the Amazon.com platform.  Amazon.com Inc. requires that Sellers enter into agreements with it concerning the relationship between it and Sellers, duties and responsibilities of the Sellers, and other policies.  *See, e.g.,* Amazon.com's Participation Agreement *available at* https://www.amazon.com/gp/help/customer/display.html/ref=hp_rel_topic?ie=UTF8&nodeId=1161272 (last visited Jul. 8, 2019); *see also* Amazon.com's Restricted Products *available at* https://www.amazon.com/gp/help/customer/display.html?nodeId=200277040 (last visited Jul. 8, 2019).

---

[5] https://trustfile.avalara.com/resources/amazon-warehouse-locations/atl6/ (last visited Jul. 8, 2019).

36.     To sell on Amazon.com, a Seller begins with a set of quick start

instructions.  *See* Amazon.com Quick Start *available at*

https://www.amazon.com/gp/help/customer/display.html/ref=hp_bc_anchor

?ie=UTF8&nodeId=1161232 (last visited Oct. 10, 2017).

37.     Amazon.com allows Sellers to sell identical items under the same

Amazon Standard Identification Number ("ASIN").[6]

**B.  Understanding Amazon's Product Search Algorithm**

38.     Product rankings on Amazon determine whether a potential Buyer

sees a Seller's products.  If a Buyer's search results do not include a product on

---

[6] Amazon Standard Identification Numbers (ASINs) are unique

blocks of 10 letters and/or numbers that identify items.  You can
find the ASIN on the item's product information page at
Amazon.com.  For books, the ASIN is the same as the ISBN number,
but for all other products a new ASIN is created when the item is
uploaded to our catalogue.  You will find an item's ASIN on the
product detail page alongside further details relating to the item,
which may include information such as size, number of pages (if it's
a book) or number of discs (if it's a CD).

ASINs can be used to search for items in our catalogue.  If you know
the ASIN or ISBN of the item you are looking for, simply type it into
the search box (which can be found near the top of most pages), hit
the "Go" button and, if the item is listed in our catalogue, it will
appear in your search results.

http://www.amazon.com/gp/seller/asin-upc-isbn-info.html (last visited Jul. 8,
2019).

the first or second page, chances are that Buyer will never see . . . or buy from a

particular Seller.  In order to be on the first or second page of search results, an

excellent product ranking becomes mandatory.

39.    Amazon's product search algorithm is called "A9."

https://startupbros.com/rank-amazon/ (last visited Apr. 8, 2018).  A9's core

ranking factors include –

>  **Conversion Rate\*** – These are factors that Amazon has found have ·
>  a statistically relevant effect · on conversion · rates. Examples of
>  conversion · rate · factors include · customer reviews, quality · of
>  images and pricing.
>
>  **Relevancy** – Remember the first · step · in the A 9 algorithm? They
>  gather · the results, and then they decide · how to list them.
>  Relevancy factors tell · A 9 when to consider your product · page for
>  a given search · term. Relevancy factors include · your title · and
>  product · description.
>
>  **Customer Satisfaction & Retention** – How do · you make · the most
>  money · from a single customer? Make them so happy · that they
>  keep · coming back. Amazon knows that the secret · to max RPC lies
>  in customer retention. It's a lot · harder to get · someone · to spend ·
>  $100 once than $10 ten times. Customer Retention factors include ·
>  seller · feedback · and Order Defect Rate.

https://startupbros.com/rank-amazon/ (last visited Jul. 8, 2019).

VII.    **AMAZON BRAND REGISTRY**

40.    For nearly two years, Plaintiff has enjoyed protection through

Amazon's Brand Registry Program.  *See* email from Amazon Brand Registry

Support to Plaintiff (Jul. 20, 2017)(congratulating Plaintiff on its successful enrollment in the Program), Exhibit 2.  That is, Plaintiff's "UberScientific branded products [were] automatically included in the Brand Registry."  Exhibit 2.

41.    Amazon's Brand Registry Program helps protect brands that sell their products on Amazon.com.  Amazon Brand Registry is a powerful tool which helps sellers protect their registered trademarks on Amazon and create an accurate and trusted experience for customers.[7]

42.    "Amazon Brand Registry is only available to sellers who manufacture or sell their own brand products. It allows the seller to create more details on the products page as well as register themselves as the brand owner. This allows sellers to create a company brand, manage it, and sell products under that brand name on Amazon."[8]

43.    "Amazon Brand Registry helps you protect your registered trademarks on Amazon and create an accurate and trusted experience for customers.  Your enrollment in the Amazon Brand Registry provides access · to

---

[7] *See generally,* https://brandservices.amazon.com/ (explaining Brand Registry's details)(last visited Jul. 8, 2019).

[8] https://www.operationroi.com/2017/06/amazon/amazon-brand-registry (last visited Jul. 8, 2019).

powerful tools including proprietary text and image search, predictive automation based on your reports of suspected intellectual property rights violations, and increased authority over product listings with your brand name. Enroll now so your brand and Amazon can work together to reduce potential intellectual property rights violations and promote an accurate representation of your brand on Amazon."[9]

### A. Requirements to Become Brand Registered

44.     In order to become brand registered on Amazon, a Seller must own a registered trademark.  Amazon "currently only accept[s] active word marks or graphical trademarks with a text component (words, letters, or numbers) that have been issued by government patent and trademark offices in the United States, Canada, Mexico, India, Australia, Japan, France, Germany, Italy, Spain, the United Kingdom, and the European Union."[10]

45.     Implicit in Amazon's Brand Registry requirements, and germane to the present lawsuit, is that the applicant rightfully *own* the registered trademark.

---

[9] https://brandservices.amazon.com/ (last visited Jul. 8, 2019).

[10] https://brandservices.amazon.com/ (last visited Jul. 8, 2019).

### B. Applicability of Brand Registry

46.     Until recently, the Brand Registry program required less formalities and offered fewer protections.  Additionally, Brand Registry mainly applied to famous brands.  This first program is often referred to a Brand Register 1.0.

47.     However, in 2017, Amazon set out formalities to enter the program such as owning a federally registered trademark. Additionally, the program became open to brands of any size, which opened the program to private-label Sellers.  The second iteration is commonly known Brand Registry 2.0.

48.     Private-labeling on Amazon is a straightforward process that generally follows the following steps:

- Decide on a product to sell ·
- Find a supplier and create private label product ·
- Design a logo and create a brand name ·
- Open an Amazon account and create a listing
- Create an Amazon FBA shipping plan ·
- Generate your first Amazon sale!

https://startupbros.com/create-private-label-product-china/ (last visited Jul. 8, 2019).

C.      **Advantages of Brand Registry**

49.     Once Amazon grants a Brand Registry application, the owner or administrator for the brand is afforded certain privileges.

50.     "When you own the brand of your product you can influence the product detail information for those products. Usually when you submit a product for sale, Amazon determines the product detail that will be displayed however as a brand owner the product displayed text that you input is automatically displayed. The brand owner also has control over the titles, images, and attributes for each product, as well as qualifying to take advantage of Enhanced Brand Content Pages."[11]

51.     "Another benefit is that you can potentially list your products without the UPCs or EANs. Instead you can specify an alternate key attribute to the product instead of the UPCs or EANs, a standard product ID. This will make it easier on a day-to-day basis to list your product and create product variations."[12]

---

[11] https://www.operationroi.com/2017/06/amazon/amazon-brand-registry (last visited Jul. 8, 2019).

[12] https://www.operationroi.com/2017/06/amazon/amazon-brand-registry (last visited Jul. 8, 2019).

**D.      Filing an Infringement Complaint with Amazon**

52.      The online complaint process at Amazon.com is streamlined and

straightforward.  https://www.amazon.com/gp/help/reports/infringement

(last visited Jun. 12, 2019).  A purported rights owner has to provide very little

information to file a complaint and receive an automated suspension of a seller's

listing.

53.      At the end of the complaint form, a complainant makes the

following statements:

> I have a good faith belief that the content(s) described above
> violate(s) my rights described above or those held by the rights
> owner, and that the use of such content(s) is contrary to law.

> I declare, under penalty of perjury, that the information contained in
> this notification is correct and accurate and that I am the owner or
> agent of the owner of the rights described above.

https://www.amazon.com/gp/help/reports/infringement (last visited Ap Jun.

12, 2019).

54.      Amazon.com requires the rights owner to withdraw a complaint.

That is, a rights owner must send an e-mail from the complainant's e-mail

address requesting to withdraw a complaint.

55.      Often, should an accused seller provide original invoices, the rights

owner will withdraw a complaint.

56.     Should a rights owner refuse to withdraw a complaint, the Amazon.com seller's ASIN is locked so a seller cannot sell goods associated with that ASIN.  Further, complaints may lead to account suspension.

57.     An account suspension is where Amazon locks a seller's account so that it cannot sell any item, even those unrelated to the ASIN complained of.

VIII.   **DEFENDANT'S FRAUDULENT COMPLAINTS**

58.     By and through deliberate, willful, and malicious acts, Defendant DOE has deprived Plaintiff of the ability to compete fairly, thus causing immediate and irreparable harm to Plaintiff and the public.  Further, on information and belief, Defendant DOE has generated substantial revenue as a result of its intellectual property infringement complaint scheme.

59.     On May 20, 2019, Plaintiff received 2 policy warnings from Amazon for the Accused Product.  Both related to two versions of the same product; however, one applied to Child Resistant Packaging (ASIN: B07DMP62H1, below left), and the other did not.



60.     Upon information and belief, Defendant DOE filed both complaints.

61.     Nevertheless, as a result of Defendant DOE's fraudulent counterfeit complaints with Amazon, Amazon suspended Plaintiff's offerings so that they were no longer available to Amazon customers.

62.     Defendant DOE's fraudulent and bad-faith complaints, and Amazon's resulting suspension, have materially affected potential sales because purchasers no longer have the option to purchase from Plaintiff.

---

13 Uber Numb 5% Lidocaine Topical Anesthetic Cream Advanced Formula Rapid Absorption Non-Oily (2 Ounce (CR)) *available at* https://www.amazon.com/Lidocaine-Anesthetic-Advanced-Absorption-Non-Oily/dp/B07DMP62H1?th=1 (last visited Jun. 12, 2019).

14 Uber Numb 5% Lidocaine Topical Anesthetic Cream Advanced Formula Rapid Absorption Non-Oily (2 Ounce (NCR)) *available at* https://www.amazon.com/Lidocaine-Anesthetic-Advanced-Absorption-Non-Oily/dp/B07KQND31B?th=1 (last visited Jun. 12, 2019).

63.     Additionally, as a result Defendant DOE's fraudulent and bad-faith complaint, Plaintiff has suffered extensive loss of sales and loss of goodwill.

### A. The First Complaint

64.     On May 20, 2019, Plaintiff received 2 policy warnings from Amazon for the Accused Product.

> Notice one:
> -- Date: 05/20/2019
> -- ASIN: B07KQND31B
> -- Name of Rights Owner: rodriquez@i-copyright.com
> -- Infringement Type: Counterfeit

*See* email from Amazon.com, Inc., Notice Dispute Department, to UberScientific (May 20, 2019; 05:57 AM), Exhibit 5 (Complaint ID: 6087096581); *see also* email from Amazon.com, Inc., Notice Dispute Department, to UberScientific (May 22, 2019), Exhibit 6, pp 1-2.

65.     Inexplicably, the complainant for this trademark counterfeit claim was Bobbie Rodriquez (rodriquez@i-copyright.com).  However, even a cursory review of the '832 Trademark reveals that *Bobbie Rodriquez* has no ownership interest in that registration.

### B. The Second Complaint

66.     Again, on August 31, 2018, Plaintiff UberScientific received a second email from Amazon stating another policy warning for the product listed below:

20

Notice two:
-- Date: 05/20/2019
-- ASIN: B07DMP62H1
-- Name of Rights Owner: rodriquez@i-copyright.com
-- Infringement Type: Counterfeit

*See* email from Amazon.com, Inc., Notice Dispute Department, to UberScientific

(May 22, 2019), Exhibit 6, pp 1-2.

### C. Plaintiff's Amazon.com Competitors

67.    Upon information and belief, Amazon Sellers "Ebanel" and "Clinical

Resolution Laboratory, Inc." compete with Plaintiff on the Amazon.com selling

platform.

68.    Upon further information and belief, Ebanel Laboratories, Inc. and

Clinical Resolution Laboratory, Inc. own and operate Amazon accounts under

the same names.  Upon further information and belief, both businesses share the

same address:  1400 W. Lambert Road, Ste C, Brea, California 92821.

Additionally, upon information and belief, the businesses are owned by Ana Lee

and Justin Lee, respectively.

### D. Defendant DOE's Anonymity

69.    Plaintiff has made several non-judicial attempts to ascertain the real

individuals behind Defendant DOE.  None of its efforts have been successful.

For this reason, Plaintiff must turn to judicial options.

70.     Upon information and belief, Defendant DOE does not use its real names on email addresses used to file complaints.

71.     Upon information and belief, Defendant DOE has used a fake email address rodriquez@i-copyright.com to file false IP complaints.

IX.    **DEVASTATING EFFECTS**

72.     Because Plaintiff's Amazon business supports the Houck family, dedicating time and monetary resources resulting in devasting effects to the same.

### A. Plaintiff's First Appeal Resulted in Temporary Deactivation

73.     Within minutes and at 6:39 AM, UberScientific responded to the complaint with "a letter of authorization from the manufacturer or Rights Owner." *See* email from UberScientific to Amazon.com, Inc., Notice Dispute Department (May 20, 2019; 06:39 AM), Exhibit 5 (Complaint ID: 6087096581).

74.     The attached Letter of Authorization included trademark ownership details, Amazon Seller UberScientific as an authorized seller, an authenticity attestation, and brand registry information.  Exhibit 5.  The Letter appeared on an UBERSCIENTIFIC letterhead.  Exhibit 5.

75.     Despite proving that UberScientific was authorized to use the trademark, Defendant DOE'S fraudulent complaints resulted in temporary

deactivation of Plaintiff's Amazon account on May 22, 2019.  *See* email from
Amazon.com, Inc., Notice Dispute Department, to UberScientific (May 22, 2019),
Exhibit 6, pp 1-2.

### B.  Plaintiff's Second Appeal was Ignored

76.     Following up on its First Appeal, two days later, Plaintiff added
more detail beyond providing proof that it was authorized to use the Asserted
Trademark.  *See* email from UberScientific to Amazon.com, Inc., Notice Dispute
Department (May 20, 2019), Exhibit 6, p. 3.  Plaintiff explained that its
"competitors [were] abusing the RO [Rights Owner] complaint system against
[its] brands."  *See* email from UberScientific to Amazon.com, Inc., Notice Dispute
Department (May 24, 2019), Exhibit 6, p. 3.

### C.  Plaintiff's Elevated Third Appeal Resulted in Denial

77.     As another four days passed without resolution, Plaintiff elevated its
appeal to Amazon's Executive Relations Team explaining how the complaints
were bogus and proof that it was indeed authorized to sell using the Asserted
Trademark.  *See* email from UberScientific to Amazon.com, Inc., Executive
Relations Team (May 28, 2019), Exhibit 6, pp. 4.

78.     Nonetheless, a day later, Amazon requested greater detail
concerning the causes for infringement, the resolution efforts to combat

counterfeiting, proactive steps to prevent reoccurring infringement, and the reasons why Plaintiff believed the complaints to be made in error.  *See* email from UberScientific to Amazon.com, Inc., Executive Relations Team (May 29, 2019), Exhibit 6, pp. 5-6.

79.     A day later, since Plaintiff did not explain greater detail concerning infringement (because it never infringed), it's appeal was denied.  *See* email from UberScientific to Amazon.com, Inc., Executive Relations Team (May 30, 2019), Exhibit 6, pp. 7-8.  Finally, on June 1, 2019, Amazon "decided that [Plaintiff] may sell on Amazon.com again."  *See* email from Amazon.com, Inc., Notice Dispute Department, to UberScientific (Jun. 1, 2019), Exhibit 6, p. 10.

X.   **CLAIMS**

## COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

80.     Plaintiff re- alleges paragraphs 1-79 as if set forth in full herein.

81.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Plaintiff

is entitled to and hereby move the Court for a judgment declaring that:

82.     The Accused Products do not and have not infringed US Trademark

Reg. No. 5,190,832; and

83.     As a result of Defendant DOE's allegations of infringement against

the Plaintiffs and representations to Amazon.com that the Accused Products

infringe the '832 Trademark, an actual controversy exists as to infringement of

the '832 Trademark.

84.     Plaintiff is entitled to a declaratory judgment that Plaintiff is not

infringing the '832 Trademark.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACTUAL AND BUSINESS
## RELATIONS

85.     Plaintiff re- alleges paragraphs 1-79 as if set forth in full herein.

86.     Defendant DOE has interfered improperly and without privilege

with Plaintiff's contractual and business relations by engaging in the aforesaid

conduct to induce Amazon.com Inc. not to continue contractual relations or business with Plaintiff.

87.     Defendant DOE has acted improperly, tortiously, and without legal basis by submitting a false infringement report with Amazon.

88.     Defendant DOE has knowledge of Plaintiff's contracts and business relations with Amazon.

89.     Defendant DOE has acted with a direct or "specific" intent to injure Plaintiff.

90.     Defendant DOE's engaged in improper conduct in submitting a false infringement report.

91.     The foregoing actions by Defendant DOE was willful, malicious, specifically intended to harm Plaintiff's contractual and business relations with Amazon and constitute aggravating circumstances sufficient to justify the imposition of a punitive damages award.

92.     As a direct and proximate result of the aforesaid unlawful conduct of Defendant DOE, Plaintiff has suffered substantial and irreversible damage to its professional reputation and lost profits.

<u>COUNT III</u>
<u>GEORGIA DECEPTIVE TRADE PRACTICES ACT</u>
<u>(O.C.G.A § 10-1-370 *ET SEQ.*)</u>

93.     Plaintiff re- alleges paragraphs 1-79 as if set forth in full herein.

94.     Defendant DOE's manipulated the Amazon complaint and review processes, which constitutes deceptive trade practices in violation of O.C.G.A. §§ 10-1-372 and 10-1-420.

95.     Defendant DOE's use of false or fraudulent statement in its advertisements constitute a violation of O.C.G.A. § 10-1-421.

96.     The advertisements alleged above were made in and to residents of the state of Georgia.

97.     Plaintiff UberScientific, LLC has suffered damages as a result of the misleading and false advertisements of Defendant DOE and will continue to suffer damage unless the Court enjoins Defendant DOE from advertising, marketing, or purporting to own the '832 Trademark or from engaging in any other false advertising with regard to products or engaging in any other unfair competition based upon false and misleading or confusing statements related to Plaintiff's Accused Products.

98.     In addition to injunctive relief, Plaintiff is entitled to recover actual damages it sustains as a consequence of Defendant DOE's violation of the

Georgia Code, together with costs and attorney's fees incurred in bringing this claim.

99.     Plaintiff is entitled to statutory damages of $2,000.00 per violation, or in other words, Plaintiff is entitled to $2,000.00 for each potential customer who clicked on an offending link.

100.    Upon information and belief, Defendant DOE's infringing activities have caused, and unless enjoined by this Court, will continue to cause irreparable injury and other damages to Plaintiff's business reputation and to the goodwill associated with Plaintiff, including diversion of consumers, lost sales and lost profits.  Plaintiff has no adequate remedy at law.

## COUNT IV
## GEORGIA STATUTORY UNFAIR COMPETITION
## (O.C.G.A § 23-2-55)

101.    Plaintiff re- alleges paragraphs 1-79 as if set forth in full herein.

102.    Upon information and belief, Defendant DOE's unauthorized assertion of the '832 Trademark has been with the intention of deceiving and misleading the public, and thereby attempting to encroach upon the business of Plaintiff in violation of O.C.G.A § 23-2-55.

103.    Defendant DOE's unauthorized use of the '832 Trademark has caused, and unless restrained by this Court, will continue to cause immediate

and irreparable injury to Plaintiff because a substantial number of past, present and potential customers have been and are likely to be confused, deceived and misled as to the true source, origin, sponsorship, approval, authorization, association, affiliation and characteristics of the products offered for sale and sold by Defendant DOE.  Plaintiff has no adequate remedy at law for such injury.

104.    Unless enjoined by this Court, Defendant DOE will continue said deceptive trade practices, thereby deceiving the public and causing Plaintiff immediate and irreparable injury for which it has no adequate remedy at law.

## COUNT V
## GEORGIA COMMON LAW UNJUST ENRICHMENT

105.    Plaintiff re- alleges paragraphs 1-79 as if set forth in full herein.

106.    Defendant DOE's unauthorized assertion of the '832 Trademark resulted in a lack of competition from Plaintiff, from which Defendant DOE has derived substantial profits, has unjustly enriched Defendant DOE by enabling them to unfairly appropriate the benefit of the  Accused Product's Amazon metrics.

107.    Defendant DOE has earned revenues and profits to which it is not legally entitled, and Plaintiff continues to be irreparably injured by the aforesaid acts of Defendant DOE, which acts have greatly and unjustly enriched Defendant

DOE at Plaintiff's expense, for which injury Plaintiff has no adequate remedy at

law.

XI.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff UberScientific, LLC respectfully prays for the following relief:

A.     That the Court enter a declaratory judgment that Plaintiff has not infringed in any way the '832 Trademark;

B.     That the Court issue an injunction, and Defendant DOE should be enjoined from filing any Amazon intellectual property complaints against Plaintiff.

C.     That the Court enter judgment and order as part of the injunction Defendant DOE be directed to file with this Court and serve on Plaintiff within thirty days after issuance of the injunction, a report in writing under oath, setting forth in detail the manner and form in which Defendant DOE has complied with the injunction;

D.     That the Court enter judgment in the amount of Plaintiff's damages, Defendant DOE's profits, Plaintiff's reasonable attorney fees, and costs of suit;

E.     That the Court grant Plaintiff prejudgment interest and costs;

F.     That the Court enter judgment for enhanced damages under 15 U.S.C. § 1117 and punitive damages under state law as appropriate; and

G.     That the Court grant such other and further relief as the Court may

deem just.

## <u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted, this July 8, 2019.

By: ___/Jeffrey T. Breloski___
Jeffrey T. Breloski
Georgia Bar No. 858291
E-mail:  jbreloski@ATLawip.com
ATL*AWIP* LLC
1265 Stuart Ridge
Johns Creek, Georgia 30022
678.667.3491

*Attorney for Plaintiff UberScientific LLC*

33

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to LR 7.1D, the undersigned counsel certify that the foregoing

has been prepared in Book Antiqua 13 point, one of the four fonts and points

approved by the Court in LR 5.1C.

/s/ Jeffrey T. Breloski
Jeffrey T. Breloski
Georgia Bar No. 858291
E-mail:  jbreloski@ATLawip.com